**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IN RE:

    GORDON C. VAUGHN,

    Debtor,

    Case No. 03-CV-70906-DT

_____

    HONORABLE DENISE PAGE HOOD

TIDEWATER FINANCE COMPANY,

    Appellant.

_____/

**MEMORANDUM OPINION AND ORDER**

**I.    JURISDICTION**

This appeal arises under the district court's jurisdiction to hear appeals from the final orders, judgments and decrees of the bankruptcy courts. 28 U.S.C. § 158 (a)(1). If an order in a bankruptcy fully resolves a proceeding or conclusively determines a dispute, it is considered final. *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 407 (E.D. N.Y. 1989).

Appellant, Tidewater Finance Company ("Tidewater"), asserts the two orders appealed from in this matter are final orders under 28 U.S.C. § 158(a)(1). An order which grants or denies relief from an automatic stay in bankruptcy is a final order. *In re Sun Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986). An order that confirms a Chapter 13 plan despite the objection of a creditor is also a final order. *In re Francis*, 273 B.R. 87 (6th Cir. B.A.P. 2002); *In re Mahoney*, 153 B.R. 174 (E.D. Mich. 1992).

**II.     STANDARD OF REVIEW**

A bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, while its conclusions of law are reviewed *de novo*. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 476-77 (6th Cir. 1996); Bankr. R. 8013. Where a bankruptcy court's determination involves a mixed question of fact and law, the district court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997)(quoting *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993)).

**III.    STATEMENT OF THE CASE**

Tidewater appeals two orders of the bankruptcy court. One order denied relief from the automatic stay. The other order confirmed the Debtor's Chapter 13 plan over the objection of Tidewater.

Debtor Gordon Vaughn filed a Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Michigan on October 25, 2002. Tidewater held a perfected security interest in a contract for the sale of a vehicle originally financed by the Debtor through a car dealer on June 27, 2002. The contract was assigned to Tidewater. The contract was for $14,503.00, payable in monthly installments of $400.14 for sixty months with interest at 21.95%. There was a security interest in the vehicle as collateral for the unpaid purchase price and costs. Debtor Vaughn defaulted on payments due September 2, 2002 and October 2, 2002 and the vehicle was repossessed by Tidewater on October 23, 2002.

Two days after repossession by Tidewater, Vaughn filed a Chapter 13 petition and demanded return of the vehicle to him. In his Chapter 13 plan dated October 24, 2002, Vaughn stated the value

of the vehicle was $11,690 and proposed that he retain the vehicle and that Tidewater receive the amount of $11,690 with interest at 12% per annum over 54 months at $294.76 per month and that Tidewater's claim in excess of the $11,690 be treated as an unsecured claim.

At that time the vehicle was in Tidewater's possession; it had not been disposed of by Tidewater. The amount Tidewater claimed remaining on the contract for the vehicle was $15,208. Tidewater filed a Motion to Terminate the Automatic Stay on November 5, 2003, seeking liquidation of the vehicle that it had repossessed prior to the filing date of the Chapter 13 Petition. Tidewater also filed a Motion for an Order Reserving Litigation Rights on November 5, 2003, seeking to allow the parties to litigate as though Tidewater had possession of the vehicle and avoid the risk of sanctions under 11 U.S.C. § 362(h).

The Bankruptcy Court confirmed the Plan over Tidewater's objection on February 28, 2003, having denied Tidewater's Motion to Lift the Stay on February 26, 2003. The Bankruptcy Court in denying the Motion for Relief from the Automatic Stay held that, "the vehicle became the property of the bankruptcy estate upon the filing of the bankruptcy petition," citing *In re Elliott*, 214 B.R. 148 (6th Cir. B.A.P. 1997). (Order Denying Motion for Relief from Stay, February 26, 2003, United States Bankruptcy Court, E.D. MI.)[1] Tidewater timely appealed.

**IV.    THE APPEAL**

On appeal, Tidewater claims the determination of the following issues will resolve the matter:

---

[1] The Bankruptcy Court Docket Sheet shows an entry at Docket #50, dated 3/18/03, entitled "Opinion concluding that the vehicles are property of their respective bankruptcy cases RE: (7-1) Motion For Relief From Stay...". The appeal of this matter was docketed on 3/10/03 (Docket #43). Docket # 50 was not designated as part of the Record on Appeal, however, this court believes it is reported as In re Sanders, 291 B.R. 97 (Bankr. E.D. Mich. 2003).

1.      Whether the Contract between the Dealer and Vaughn is a security agreement under Michigan law.
2.      Whether under M.C.L. § 257.236a, Vaughn's interest in the vehicle terminated when Tidewater repossessed it on October 23, 2002, after Vaughn defaulted under the Contract.
3.      Whether the vehicle became the property of Vaughn's bankruptcy estate when he filed bankruptcy on October 25, 2003.
4.      Whether Tidewater was entitled to relief from the automatic stay because Vaughn's Chapter 13 plan did not redeem the Vehicle in accordance with the applicable federal and non-bankruptcy law.
5.      Whether Vaughn's Chapter 13 Plan can treat Tidewater under 11 U.S.C. § 1325(a)(5)(B) and cram down the value of Tidewater's allowed secured claim to $11,690 on a *res* that was not property of the estate.
6.      Whether 11 U.S.C. § 108(b) controls the time within which Vaughn's Chapter 13 plan must pay Tidewater the amount to redeem the vehicle that Tidewater repossessed from Vaughn on October 23, 2002.

(Opening Brief of Appellant, Tidewater Finance Company, May 5, 2003 at 3.) Vaughn does not dispute that these issues arise in this case. However, this Court finds that all the questions posed by Tidewater are resolved by a determination of the third question posed above--whether the vehicle became the property of Vaughn's bankruptcy estate when he filed bankruptcy on October 25, 2003.[2]

## V.   ANALYSIS

Tidewater claims that in order to determine whether a debtor's interest in property is an asset of the bankruptcy estate the Court must undertake two analyses using two different bodies of law. First the Court must analyze the debtor's ownership interest in the property using non-bankruptcy law, usually state law. If the Court determines that the debtor had an interest in ownership when filing bankruptcy, not as a result of filing bankruptcy then the Court proceeds to the second part of the analysis. Second, the Court must analyze whether federal law, bankruptcy law includes that

---

[2] There is no dispute that Tidewater had a secured interest in the vehicle. All the other questions raised by Tidewater hinge on whether the vehicle was property of the estate such that it was required to be turned over.

4

interest in the bankruptcy estate. Tidewater asserts the Bankruptcy Court erred in its analyses.

Tidewater argues that when applying *Butner v. United States*, 440 U.S. 48 (1979), the Bankruptcy Court did not use state law to define the debtor's interests in the property or misconstrued Michigan state law. Additionally, Tidewater claims that the focus of the Bankruptcy Court should have been on Vaughn's interest in the property under *Butner*, not on Tidewater's interest. Tidewater asserts that the Bankruptcy Court misconstrued Michigan state law, particularly M.C.L. § 257.236a and also the Uniform Commercial Code as conferring property interests in collateral.

The bankruptcy estate that is created when a person files a bankruptcy petition consists of all of the legal and equitable interest in property held by that person at the time the case is filed, wherever that property is located and by whomever the property is held. 11 U.S.C. § 541 (a). When disputes over whether property is included in the bankruptcy estate arise the court must conduct an analyses of the attributes of ownership or power the debtor has over the property in question under non-bankruptcy law, usually state law, at the time the debtor filed bankruptcy. *Butner,* 440 U.S. at 99; *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993); *In re Van Dresser Corporation*, 128 F.3d 945, 947 (6th Cir. 1997); *Koch Ref. v. Farmers Union Cent Exch., Inc.*, 831 F.2d 1339,1343 (7th Cir. 1987). If the court finds that under non-bankruptcy law (usually state law, but in some cases other federal law) the debtor has an interest in the property, then the court must determine whether federal bankruptcy includes, or excludes, the interest from inclusion in the bankruptcy estate. *Butner*, 440 U.S. at 99.

The first analysis to be conducted under *Butner* was the subject of *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) in which the Supreme Court was called upon to determine the

interests of a debtor and the Internal Revenue Service ("IRS") in equipment the IRS had seized prior to the bankruptcy. The Supreme Court concluded that the business property seized was still owned by the debtor applying non-bankruptcy law found in the federal tax code, but not state law. The federal tax code referred to the debtor as the owner after seizure but prior to sale. Since a sale had not taken place the court deemed the property remained the debtor's and was subject to turnover under § 542(a) of the Bankruptcy Code. *Whiting Pools*, 462 U.S. at 211. The Supreme Court also concluded that other seizures of property under other non-bankruptcy law might not result in turnover. *Id.* at 209-10.

Tidewater concedes that some courts have construed *Whiting Pools* as setting a bright line for determining that "repossessed" property held by a secured creditor at the beginning of a bankruptcy case is property of the estate, such as, *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir. 1983), *In re Sharon*, 234 B.R. 676 (6th Cir. B.A.P. 1999), *In re Elliott, supra, In re Jackson,* 251 B.R. 597 (Bankr. D. Utah 2000), and *In re Pluta*, 200 B.R. 740 (Bankr. D. Mass. 1996). Tidewater argues those decisions are flawed. A number of cases in the Sixth Circuit and this District have addressed the issue raised in *Whiting Pools*.

In the case, *In re Elliott*, *supra,* the Sixth Circuit Bankruptcy Appellate Panel ("B.A.P."), construing Ohio law, found that the debtor's vehicle which had been repossessed prepetition became a part of the bankruptcy estate. In that case the debtor had "surrendered" the vehicle in question, a sale of the vehicle had been scheduled by the secured creditor, but the debtor filed a Chapter 13 bankruptcy petition before the sale. The B.A.P. recognized that under Ohio law, "a change of vehicle ownership is not consummated until the certificate of title is issued in the name of the purchaser." *In re Elliott,* 214 B.R. at 150. The B.A.P. further noted, "[n]either possession nor title

6

are alone determinative of whether an interest constitutes property of the estate under §541," citing a number of bankruptcy cases decided in Ohio. *Id.* at 151. "The line of cases on this issue, as well as interpretation of the relevant statutes, makes it clear that the crucial point in time is when the Elliotts lose the right to redeem collateral." *Id.*

> The Ohio statute in *In re Elliott* provided:
>
>> At any time before the secured party has disposed of collateral or entered into a contract for its disposition...the debtor or any other secured party, may, unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding, and preparing the collateral for disposition, in arranging for the sale.

Ohio Rev. Code Ann. §1309.49 (Banks-Baldwin 1996).

In *In re Sharon*, the Sixth Circuit B.A.P., addressing the issues of violation of the automatic stay and adequate protection, also found that under Ohio law, the right to possession of a vehicle which the secured creditor had repossessed but not sold was a right that became a part of the bankruptcy estate on the petition date, citing *Whiting Pools*. *In re Sharon,* 234 B.R. at 681.

The Bankruptcy Court's decision in this case noted that the analysis must begin with a look at Michigan law. The Bankruptcy Court thereafter reviewed a number of provisions of Michigan law relating to a debtor's interest in a vehicle that has been repossessed, noting the disagreement amongst various courts as to whether the right to redeem, but not the property itself, becomes a part of the estate. *In re Vaughn,* 291 B.R. 97, 99 (Bankr. E.D. Mich. 2003). The Bankruptcy Court addressed the issue of whether the right to redeem is enough to make the repossessed property part of the estate, noting that the vast majority of opinions held that if the repossessed vehicle had not been sold, turnover was appropriate. *Id.* at 102.

Under Michigan law, an owner's interest in a repossessed motor vehicle is governed by M.C.L. § 257.236a which provides in part:

> (1) If the interest of the owner in a vehicle is terminated by the enforcement of a security agreement, the transferee of the owner's interest shall promptly mail or deliver to the secretary of state the last certificate of title if the transferee has possession of the certificate; the application for a new certificate in the form prescribed by the secretary of state; and a certification made by or on behalf of the holder of the security interest so enforced that the vehicle was repossessed, that the interest of the owner was lawfully terminated by enforcement of the security agreement, and whether the owner has delivered the last certificate of title to the transferee of the owner's interest, naming the transferee, or if not, the reason for not naming the transferee, and the location of the certificate of title as known to the owner. If the holder of the security interest succeeds to the interest of the owner and holds the vehicle for resale, the holder need not secure a new certificate of title but, upon transfer to another person, shall promptly mail or deliver to the transferee or to the secretary of state the certificate, if in the holder's possession, a certification, and other documents required to be sent to the secretary of state by the transferee.
>
> (2) If the interest of the owner in a vehicle is terminated by sale pursuant to levy of execution, attachment, or by other process of a court, the transferee of the owner's interest shall promptly mail or deliver to the secretary of state the last certificate of title, if the transferee has possession of the certificate, the application for a new certificate of title in the form prescribed by the secretary of state, and a certification upon a form prescribed by the secretary of state, made by the officer of the court who conducted the sale, setting for the date of the sale, the name of the purchaser, and whether the officer of the court has delivered the certificate of title to the purchaser and if not, the reason for nondelivery and the location of the certificate of title so far as known to the officer of the court.
>
> (3) A person holding a certificate of title in which the interest of the owner named on the certificate has been terminated in the manner provided by subsection (1) or (2), shall mail or deliver the certificate to the secretary of state upon request. The delivery of the certificate pursuant to the to request of the secretary of state does not affect the rights of the person surrendering the certificate and the action of the secretary of state in issuing a new certificate of title as provided in this act is not conclusive upon the right of an owner or holder of a security interest named in the old certificate.

M.C.L. § 257.236a . Tidewater argues that the Bankruptcy Court misconstrued this statute because

8

that Court focused on Tidewater's ownership interest in the vehicle upon repossession as opposed to Vaughn's interest upon repossession. Tidewater also argues about the definition of the words "enforce" and "enforcement" in the statute, noting that "if the Michigan legislature intended that an owner's interest in a repossessed vehicle would not occur until a sale occurred under a security agreement, it could easily have said so in subsection (a) just as it did in subsection (b)." (Opening Brief of Appellant, May 5, 2003, at 23.) Tidewater claims that pursuant to § 257.236a, a debtor's ownership interest in a vehicle is terminated upon repossession.

Tidewater further argues that the language of M.C.L. § 440.9619 (the UCC) provides support for its position:

> (1) As used in this section, "transfer statement" means a record authenticated by a secured party stating all of the following:
> (a) That the debtor has defaulted in connection with an obligation secured by specified collateral.
> (b) That the secured party has exercised its post default remedies with respect to the collateral.
> (c) That, by reason of the exercise, a transferee has acquired the rights of the debtor in the collateral.
> (d) The name and mailing address of the secured party, debtor, and transferee.
> (2) A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the collateral.  If a transfer statement is presented with the applicable fee and request form to the official or office responsible for maintaining the system, the official or office shall do all of the following:
> (a) Accept the transfer statement.
> (b) Promptly amend its records to reflect the transfer.
> (c) If applicable, issue a new appropriate certificate of title in the name of the transferee.
> (3) A transfer of the record or legal title to collateral to a secured party under subsection (2) or otherwise is not of itself a disposition of collateral under this article and does not of itself relieve the secured party of its duties under this article.

M.C.L. § 440.9619.

Tidewater's arguments are strained at best. M.C.L. § 257.236a does provide a mechanism for a creditor who has lawfully repossessed a vehicle to obtain ownership of the vehicle. However, the language of the statute does not expressly state that repossession divests a debtor of all of his or her ownership interests. None of the language found in § 440.9619 can be construed to divest the debtor of ownership in the repossessed vehicle until the secured creditor has fully exercised its post default remedies by disposing of the vehicle by sale. A plain reading of § 440.9619(b) and (c) does not support Tidewater's argument that the debtor is divested of ownership under Michigan law. The language requires a secured party to have exercised its "post default remedies" such that a "transferee has acquired the rights of the debtor in the collateral" which can only be accomplished when the debtor has no further right to redeem, upon a sale of the collateral. Tidewater does not dispute that a debtor maintains an equitable right of redemption. Michigan's version of the UCC recognizes that a debtor has a right of redemption before a secured creditor disposes collateral. *See*, M.C.L. § 440.9623 (a debtor "may redeem collateral" and a debtor has a right of redemption "any time before a secured party has ... disposed of collateral.")

Tidewater also argues that the right to redeem a repossessed vehicle is not an interest in the vehicle because a vehicle is a "good" under the Uniform Commercial Code. Tidewater asserts that Michigan law recognizes the distinction preserved in the UCC, between corporeal and incorporeal, tangible and intangible, property. Tidewater claims that harmoniously construing both the Michigan statutes involving repossessed motor vehicles and the UCC results in the conclusion that upon repossession of the vehicle, Vaughn's rights in the vehicle was extinguished, citing *In re Kalter,* 292 F.3d 1350 (11th Cir. 2002).

Vaughn agrees with Tidewater that the filing of a Chapter 13 reorganization bankruptcy

10

frequently follows the repossession of a vehicle or the foreclosure of a house in consumer cases. This, Vaughn claims, is because reliable transportation to and from work is "essential to an effective 'reorganization.'" (Brief of the Appellee, Gordon C. Vaughn, May 14, 2003, at 4.)  He argues that the filing of the bankruptcy petition activates not only the automatic stay provision of § 362 but also § 542, which requires that property in which the debtor has an interest be turned over to the trustee. The purpose of this rule is to gather up the property of the estates in which the debtor has any legal or equitable interest.  *See* 11 U.S.C. § 541.  Vaughn argues that little would remain of § 542 if turnover was not required even after repossession, since a debtor has a right to redeem property that has been repossessed.  He asserts that an interest in a vehicle cannot be delivered without delivering the vehicle itself.  Vaughn cites in support of his argument, *Matter of Pester Refining Co.*, 845 F.2d 1479 (8th Cir. 1988); *Carr v. Security Sav. And Loan Ass'n.*, 130 B.R. 434 (D. N.J. 1991); and Collier on Bankruptcy ¶542.02 (15th Ed. Rev.).  Vaughn argues M.C.L. § 440.9504 supports the Bankruptcy Court's opinion that until a "creditor disposes of the property, the debtor remains the legal and equitable owner, subject to the creditor's debt collection remedies," which 11 U.S.C. § 362(a) suspends upon the filing of a bankruptcy petition. (Brief of Appellee, George C. Vaughn, at 6.)[3]

Since oral argument, the parties in this case have brought to the Court's attention that two circuits have decided cases involving this issue.  *In re Moffett*, 356 F.3d 518 (4th Cir. 2004); *In re*

---

[3] Vaughn asserts that Tidewater's claim that M.C.L. § 257.236a terminates an owner's interest in a vehicle is "simply wrong."  Vaughn claims that M.C.L. § 440.9504 governs a secured party's right to dispose of property after default. The version of M.C.L. § 440.9504 cited in Vaughn's brief is not the current version of the statute.  M.C.L. § 440.9504 was amended by P.A. 2000, No. 348, effective July 1, 2001.  M.C.L. § 440.9610 *et seq.* amended the substance of the language found in the former M.C.L. § 440.9504.

*Rozier*, 376 F.3d 1323 (11th Cir. 2004).  The fact patterns of those cases parallel the case at bar and the issues presented required the courts to determine the parties rights under state law. *In re Moffett* involved an interpretation of Virginia law and *In re Rozier* involved Georgia law.  Tidewater argues the secured creditor in *Rozier* did not raise the debtor's "failure to exercise his right to redeem the repossessed vehicle as grounds for" relief from the automatic stay. (Motion by Tidewater Finance to Terminate the Automatic Stay, Docket No. 7, ¶¶ 16-18, 23-25.)

In *In re Moffett* the debtor failed to make her scheduled payments on her vehicle and Tidewater repossessed the vehicle.  Moffett filed a Chapter 13 bankruptcy the same day the vehicle was repossessed. Moffett's attorney demanded the vehicle be returned as part of the bankruptcy estate. The  bankruptcy court ordered the vehicle be returned.  The bankruptcy court found that under Virginia law the repossession by Tidewater did not terminate Moffett's equitable interests including her right to redeem the vehicle and those rights became a part of the bankruptcy estate requiring return of the vehicle.  *In re Moffett,* 356 F.3d at 520.   The Fourth Circuit Court of Appeals noted that the bankruptcy court had also required adequate protection in the reorganization plan for Tidewater's secured interest.  *Id.*  Tidewater argued on appeal to the district court and the Fourth Circuit that Moffett retained only bare legal title and an intangible right of redemption.  *Id.* at 521. The Fourth Circuit, noting that it first was required to determine Moffett's interest in the repossessed vehicle, a debtor who has defaulted on a purchase agreement with a secured creditor, the Fourth Circuit looked to Virginia's Uniform Commercial Code for direction. *Id.*  After analyzing the rights of both the secured creditor and the debtor in a repossession, the Fourth Circuit  found most important that the debtor retained the right to redeem which the court concluded was part of the bankruptcy estate.  *Id.* at 522-23.  The court concluded that because the secured creditor had not

12

taken any steps to dispose of the vehicle, the debtor "possessed these rights when she filed for bankruptcy." *Id.* at 522. Noting that the rights the debtor retained were "unquestionably 'legal or equitable interests,' they were included in the bankruptcy estate," citing *Whiting Pools* and § 541(a)(1) of the bankruptcy code. *Id.* at 524. In *Moffett* the debtor had exercised the right to redeem through the Chapter 13 plan. The court there found that debtor had exercised the right to redeem through the Chapter 13 plan, the secure creditor interest was adequately protected and the vehicle should be returned. *Id.* at 522-24.

*In re Rozier* involved a debtor whose vehicle had been repossessed prepetition after the debtor's default. The debtor filed a contempt proceeding when the secured creditor failed to turn over the vehicle postpetition. The bankruptcy court construing Georgia law found that the repossessed automobile had not been sold and was therefore the property of the estate. The bankruptcy court in reaching its decision reviewed the Georgia version of the UCC, then case law, then the Georgia statute and concluded that the ownership of a vehicle in Georgia is not terminated until the repossessed vehicle is sold or by legal process. *In re Rozier,* 283 B.R. 810, 813 (M.D. Ga. 2002). The district court upon review determined that "under Georgia law there is clear case law which provides that, under the default provisions of the UCC, title does not automatically pass to the creditor upon the debtor's default, but instead, title remains with the debtor." *In re Rozier,* 290 B.R. 910, 913 (M.D. Ga. 2002)(citations omitted.). The court then stated that a debtor in Georgia has "more than the mere right to redeem after repossession by a creditor ... title remains with the debtor after repossession." *Id.* at 913. The court concluded, "[t]itle plus the right of redemption possessed by a debtor in default constitutes a substantial interest in the underlying property." *Id.*

The question was then certified by the Eleventh Circuit Court of Appeals to the Georgia

Supreme Court. *See Motors Acceptance Corp. v. Rozier,* 348 F.3d 1305 (11th Cir. 2003). Upon certification, the Georgia Supreme Court held that "ownership of such collateral does not pass to a creditor upon repossession for non payment under an installment loan sales contract." *See Motors Acceptance Corp. v. Rozier,* 278 Ga. 52, 597 S.E.2d 367 (Ga. 2004). The Georgia Supreme Court noted that the Revised Article 9 of the Georgia UCC governed its analysis. *Rozier,* 278 Ga. at 52-53. The Georgia Supreme Court further wrote that a debtor has other rights (under the Georgia enactment of the UCC) after repossession in addition to the right of redemption, including the right to notice before disposal of the collateral and the right to demand creditor exercise due care to preserve the collateral as well as the right to surplusage and for damages for a creditor's failure to comply with the requirements of the UCC. *Id.* at 53. The Georgia Supreme Court distinguished *In re Kalter*, *supra* and *In re Lewis*, 137 F.3d 1280 (11th Cir. 1998), two cases relied upon by the secured creditors in *In re Rozier*, noting that *In re Kalter* was analyzed under Florida's title statute and *In re Lewis* under Alabama common law. *Id.* at 54. The Georgia Supreme Court also noted that Georgia's title statute would support its holding. *Id.* The Eleventh Circuit, following the Georgia Supreme Court's decision on the question, upheld the decision of the bankruptcy and district courts, finding that, "[b]ecause legal title and the right of redemption of the vehicle remained with Derryl Franklin Rozier, a defaulted debtor, after creditor Motor Acceptance repossessed that vehicle, but had not yet complied with the disposition or retention procedures of the Georgia Uniform Commercial Code, the district court did not err by affirming the bankruptcy court's order holding Motor Acceptance in willful contempt of the automatic stay under 11 U.S.C.§ 362 by refusing to return the vehicle." *In re Rozier,* 376 F.3d at 1324.

In the case at bar, the vehicle was repossessed on October 23, 2002, and the Debtor filed

14

bankruptcy on October 25, 2002, two days later. Debtor Vaughn demanded possession of the vehicle in his Chapter 13 plan along with a payment plan. This Court fails to see that the facts in the instant case are significantly distinguishable from *Rozier* except that in *Rozier* the secured party agreed to return the vehicle to the debtor pending the bankruptcy decision. Debtor Vaughn's right to redemption under Michigan law is a sufficient interest to be included in the bankruptcy estate.

The Court finds that Vaughn's interest in the vehicle did not terminate upon repossession either under M.C.L. § 257.236a or § 440.9619 and that the bankruptcy judge's conclusion that return of the vehicle for inclusion in the bankruptcy estate is compelled by the Supreme Court's decision in *Whiting Pools* was not in error. The Court affirms the Bankruptcy Court's denial of the Appellant's motion for relief from the automatic stay and affirms the Bankruptcy Court's order confirming the Debtor's Chapter 13 plan.

## VI.   CONCLUSION

For the reasons set forth above, the Court dismisses Tidewater's appeal and affirms the Bankruptcy Court's Orders.

Accordingly,

IT IS ORDERED that Appellant Tidewater Finance Company's Appeal is DISMISSED with prejudice.

 /s/ DENISE PAGE HOOD  
 DENISE PAGE HOOD  
 United States District Judge

DATED: January 6, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record

on January 6, 2006, by electronic and/or ordinary mail.

                                                                                              <u>s/William F. Lewis                       </u>  
                                                                                              Case Manager